# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| AMBER TILLEY and MICHAEL TILLEY, as next friend for their minor child, P.T., | § § § | |
| | § | Case No.:4:12-cv-00408-Y |
| Plaintiff, | § § | |
| v. | § § | |
| PEASTER INDEPENDENT SCHOOL DISTRICT; | § | |
| JULIE WEST, individually and as an | § | |
| employee of Peaster Independent School District; | § | |
| DEBBIE VAN RITE, individually and as an | § | |
| employee of Peaster Independent School District; | § | |
| DOES I-XX, inclusive, | § § | |
| Defendants. | § | |

---

### OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND BRIEF IN SUPPORT

COME NOW Plaintiffs, Amber Tilley and Michael Tilley, and file their Opposition to Defendants' Motion to Dismiss, showing unto this honorable Court as follows:

### MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### FACTS

This is a complaint for money damages and injunctive relief against said Defendants, for violation of P.T.'s constitutional, statutory, and common law rights. Plaintiffs allege that said Defendants violated his civil rights, pursuant to 42 U.S.C. §1983, by conducting an unreasonable partial strip search, retaliating against P.T. in violation of his First Amendment rights, and various state causes of action.

Amber and Michael Tilley have three children that are enrolled, and students of, Peaster ISD. Over the course of several years, various disputes have arose between the parties, primarily concerning Mr. and Mrs. Tilley requesting appropriate educational services for their oldest son, brother to P.T. However, as a result of the historically contentious relationship between the Plaintiff's family and the school district, on numerous occasions employees of Peaster ISD have retaliated against the Tilley children, and further harassed the children and family. *See Complaint, para. 13*.

One manner in which employees of Peaster would harass P.T. would be to constantly accuse him of smelling badly, or calling them terms such as "dirty" and "filthy." *Id., para. 14*. P.T. is an 8-year old third grader at Peaster Elementary School. On November 15, 2011, P.T. went to school and was berated and harassed my employees of Peaster, including Defendant West, who told him that he smelled badly, was dirty, and that he had bad hygiene. Defendant West took P.T. to Defendant Van Rite's office, which was the nurses office. *Id., para. 15*. Once inside the nurse's office, Defendants instructed P.T. to disrobe and take a shower, all while they were present, and another student was in the office. It was clear to P.T. that Defendants were instructing him do this as means of torment and harassment. *Id., para. 16*.

While P.T. objecting to completely disrobing and taking a shower, Defendants West and Van Rite forced P.T. to partially remove his clothing and began violently washing his body with a washcloth, scrubbing him over large portion of his body, stuck cotton balls in his ears, all while ridiculing and harassing him about being "dirty." *Id., para. 17*. P.T. was then forced to apply deodorant at the insistence of Defendants West and Van Rite, who then told P.T. "If you ever come to school dirty again we will strip you buck naked and throw you in the shower and scrub you

down." *Id., para. 18*.   P.T. was then told that every morning when he came to school that Defendants were going to spray him and his backpack so that he did not "smell."  P.T. asked what they were going to spray him with, to which Defendants responded "it will kill you." *Id., para. 19*.

After noticing that P.T. was visibly and severely distraught on the evening of November 15, 2011, Amber and Michael Tilley learned what P.T. had encountered that day at school. *Id., para. 20*.  On November 16, 2011, Michael Tilley filed a police report with the Parker County Sheriff's Office, alleging assault and battery.  While the sheriff's obtained statements from those involved, they elected to not take any further action. *Id., para. 21*.  Beginning shortly afterwards, employees of Peaster began retaliating against P.T. as a result of his complaints and the lawful filing of the police report.  P.T. would be excluded from events and activities that all other students were allowed to participate in.  When a Peaster employee dressed as Santa Claus (believed by P.T. to be Defendant West) and came to P.T.'s class, this person asked the students if they have "been good," but then looked at P.T. and made a cross-like motion with her fingers, as if to indicate that he had been "naughty." *Id., para. 22*.

Harassment and retaliation continue against P.T.  These events have caused severe emotional trauma to P.T., to the extend that he is now in therapy and is exhibiting OCD-type behaviors, such as taking numerous baths a day, constantly cleaning his ears, and spraying himself with large amounts of cologne.  P.T. has developed a phobia of getting physically too close to people, out of fear that they will say he is dirty or smells, and is traumatized by attending school and continuing to be victimized. *Id., para. 23*.   As a result of the above, Defendants, and each of them, have wrongly caused P.T. to be deprived of his right to not be subject to unreasonable search and seizure, invasion of privacy, retaliation, and infliction of severe emotional distress, all in violation of his U.S.

Constitutional and statutory rights, all inflicting emotional distress and physical injury, and damaging him. *Id., para. 24.*

## II.

### LEGAL ARGUMENT

### A.      STANDARD OF REVIEW PURSUANT TO FRCP 12(b)(6).

To defeat a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." ***Bell Atl. Corp. v. Twombly***, 550 U.S. 544, 570 (2007); ***Guidry v. American Public Life Ins. Co.***, 512 F.3d 177, 180 (5th. Cir., 2007).  A claim meets the plausibility test "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." ***Ashcroft v. Iqbal***, 129 S.Ct. 1937, 1949 (2009).   While a complaint need not contain detailed factual allegations, it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." ***Twombly***, 550 U.S. at 555 (citation omitted). The factual actual allegations of a complaint must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact). *See **Id.***

In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff.  ***Sonnier v. State Farm Mut. Auto. Ins. Co.***, 509 F.3d 673, 675 (5th. Cir., 2007).  In ruling on such a motion, the court cannot look beyond the pleadings. ***Id.***

From reviewing Plaintiffs' Complaint, it is clear that allegations set forth rise to a level of

various Constitutional violations, actionable under 42 U.S.C. §1983, as well as claims under state law.  In describing the actions of Defendants, Plaintiffs' Complaint reasonably infers that each Defendant participated in the intentional denial of P.T.'s Constitutional rights under the First, Fourth, and Fourteenth Amendment as well as state law violations.  In addition, Plaintiffs' Complaint establishes that money damages in excess of $75,000 were incurred as a result of Defendants' illegal conduct.  For these reasons, Plaintiffs' Complaint is viable and should not be dismissed.

**B.     PLAINTIFF HAS CLEARLY INVOKED 42 U.S.C. §1983 CLAIMS UNDER THE FIRST, FOURTH AND FOURTEENTH AMENDMENTS AND THEY ARE SUFFICIENTLY PLED**

42 U.S.C. §1983 authorizes a court to grant relief when a party's federally protected rights have been violated by a state official who acted under color of state law. This section creates a cause of action for plaintiffs to enforce federal rights created by the federal Constitution.  ***Albright v. Oliver***, 510 U.S. 266, 271 (1994).

In Plaintiffs' Complaint, it is clearly set forth that Defendants violated P.T.'s civil rights, pursuant to 42 U.S.C. §1983, by conducting an unreasonable strip search, and retaliating against Plaintiff in violation of his First Amendment rights.  *See Complaint, p. 1.*

**1.     Plaintiffs Have Pled Sufficient Facts to State Their Section 1983 Claims Against the Individual Defendants**

**a.     Invasion of Privacy and Illegal Search and Seizure Claims**

The Fourth Amendment of the United States Constitution provides, in pertinent part: "The right of the people to be secured in their persons ... against unreasonable searches and seizures, shall not be violated...." U.S. Const. amend. IV.  The Supreme Court, in interpreting the Fourth Amendment, has held that "wherever an individual may harbor a reasonable 'expectation of privacy'

[the Fourth Amendment entitles the person] to be free from unreasonable governmental intrusion." *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889 (1968).   Thus, the Fourth Amendment is violated when the government conducts an unreasonable search in an area where a person has a reasonable expectation of privacy.

The Plaintiffs have properly pled in the Complaint that:

10.     At all times herein, the individual Defendants and the Defendant Peaster, have been acting under color of law.

15.     P.T. is an 8-year old third grader at Peaster Elementary School.   On November 15, 2011, P.T. went to school and was berated and harassed my employees of Peaster, including Defendant West, who told him that he smelled badly, was dirty, and that he had bad hygiene.  Defendant West took P.T. to Defendant Van Rite's office, which was the nurses office.

16.     Once inside the nurse's office, Defendants instructed P.T. to disrobe and take a shower, all while they were present, and another student was in the office.  It was clear to P.T. that Defendants were instructing him do this as means of torment and harassment.

17.     While P.T. objecting to completely disrobing and taking a shower, Defendants West and Van Rite forced P.T. to partially remove his clothing and began violently washing his body with a washcloth, scrubbing him over large portion of his body, stuck cotton balls in his ears, all while ridiculing and harassing him about being "dirty."

18.     P.T. was then forced to apply deodorant at the insistence of Defendants West and Van Rite, who then told P.T. "If you ever come to school dirty again we will strip you buck naked and throw you in the shower and scrub you down."

*Complaint, para. 10, 15-18*.

Plaintiffs' Complaint sets forth the elements of their §1983 claim for violation of P.T.'s constitutional rights under the Fourth Amendment and that Defendants acted under color of state law.  Accordingly, this claim should not be dismissed.

/ / /

Page 6 of  15

### b.        Retaliation in Violation of First Amendment

The Supreme Court has "held that the First Amendment right to petition the government includes the right to file other civil actions in court that have a reasonable basis in law or fact." ***Silva v. Vittorio***, 380 F.3d 1090, 1102 (9th Cir., 2011) citing ***Snyder v. Nolen***, 380 F.3d 279, 290 (7th Cir., 2004) and  ***McDonald v. Smith***, 472 U.S. 479, 484, 105 S.Ct. 2787 (1985).

As is set forth in the Complaint, Defendants West and Van Rite engaged in harassing behavior intended to cause emotional and physical injuries to P.T. *Complaint, para. 13*.  Defendants engaged in this behavior pursuant to the policy and/or custom to harass students whose parents request appropriate educational services for their children from the school district.  On numerous occasions employees of Peaster ISD have retaliated against the Tilley children.  *Id.*

The Complaint sets forth:

14.     One manner in which employees of Peaster would harass P.T. would be to constantly accuse him of smelling badly, or calling them terms such as "dirty" and "filthy."

15.     P.T. is an 8-year old third grader at Peaster Elementary School.  On November 15, 2011, P.T. went to school and was berated and harassed my employees of Peaster, including Defendant West, who told him that he smelled badly, was dirty, and that he had bad hygiene. Defendant West took P.T. to Defendant Van Rite's office, which was the nurses office. Moreover, the Complaint sets forth additional allegation of continuing retaliatory harassment against P.T. which were taken as a result of Plaintiffs filing a police report against the school for assault and battery from the November 16, 2011 incident.

Plaintiff's Complaint states:

21.     On November 16, 2011, Michael Tilley filed a police report with the Parker County Sheriff's Office, alleging assault and battery.  While the sheriff's obtained statements from those involved, they elected to not take any further action.

22.     Beginning shortly afterwards, employees of Peaster began retaliating against P.T. as a result of his complaints and the lawful filing of the police report.  P.T.

would be excluded from events and activities that all other students were allowed to participate in. When a Peaster employee dressed as Santa Claus (believed by P.T. to be Defendant West) and came to P.T.'s class, this person asked the students if they have "been good," but then looked at P.T. and made a cross-like motion with her fingers, as if to indicate that he had been "naughty."

23.     Harassment and retaliation continue against P.T. These events have caused severe emotional trauma to P.T., to the extend that he is now in therapy and is exhibiting OCD-type behaviors, such as taking numerous baths a day, constantly cleaning his ears, and spraying himself with large amounts of cologne. P.T. has developed a phobia of getting physically too close to people, out of fear that they will say he is dirty or smells, and is traumatized by attending school and continuing to be victimized.

Plaintiffs have properly pled their claim which arose out of Defendants' retaliation against P.T. for exercising their First Amendment right to lawfully request educational services and to file a police report. Defendants' motion o dismiss this claim should be denied.

**2.     Plaintiff Has Pled Sufficient Facts to State His Section 1983 *Monell* Claim Against the Defendant School District**

Plaintiffs' Complaint has set forth the pleading requirements for their *Monell* claim against the school district. Specifically, Plaintiff pled the existence of a policy or custom to violate students' Constitutional rights to equal access to all benefits and privileges of a public education and a right to be free from invasion of privacy, illegal search and seizure, harassment, and retaliation in school whose parents requesting appropriate educational services for their children. Moreover, the Complaint is clear that this policy was known by and carried out by policy makers at the school, namely Defendants West and Van Rite. As is set forth above, the actions of Defendants violated the constitutional rights of P.T. Thus, Plaintiffs have properly pled each of the elements of the *Monell* claim against the school district and this claim should not be dismissed.

/ / /

**C.    DEFENDANTS, WEST AND VAN RITE ARE NOT ENTITLED TO QUALIFIED IMMUNITY AS THEIR ACTIONS VIOLATED P.T.'S CLEARLY ESTABLISHED STATUTORY AND CONSTITUTIONAL RIGHTS**

State officials may be held personally liable for damages under § 1983 based upon actions taken in their official capacities.   *Hafer v. Melo*, 502 U.S. 21 (1991).  Defendants claim that they are entitled to qualified immunity on Plaintiff's §1983 causes of action.  However, Defendants are responsible in their individual capacities and are not entitled to qualified immunity.   A defendant is entitled to qualified immunity if the defendant did not violate "clearly established rights" at the time of the conduct in question. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

The United States Supreme Court has established the two-prong test in *Saucier v. Katz*,  533 U.S. 194 (2001), holding that qualified immunity analysis must proceed in two steps. First, a court must ask whether "the facts alleged show the officer's conduct violated a constitutional right." Second, if a constitutional right was violated, the court then would go on to determine whether the constitutional right was "clearly established." *Id.*   The Supreme Court's decision in *Saucier* was  clarified in *Pearson v. Callahan*[1], 555 U.S. 223 (2009).

The test for qualified immunity is objective. The defendant's actual purpose or state of mind is not material. Whether rights were "clearly established" at the relevant time is determined in most instances by looking at controlling published court decisions as of that time. See, *United States v. Lanier*, 520 U.S.259,

---

[1]
*Pearson v. Callahan*, 555 U.S. 223 (2009), is a case decided by the United States Supreme Court. The Court took to the unusual step of asking the parties to argue whether past precedent should be overturned. The theory under that 2001 decision, *Saucier v. Katz, is that without courts first ruling on constitutional questions, the law would go undeveloped in many areas.*  On January 21, 2009, the Court unanimously overturned the decision given in *Saucier v. Katz*. Justice Alito wrote in the Court's decision, "We now hold that the *Saucier* procedure should not be regarded as an inflexible requirement and that petitioners are entitled to qualified immunity on the ground that it was not clearly established at the time of the search that their conduct was unconstitutional...we conclude that, while the sequence set forth (in *Saucier v. Katz*) is often appropriate, it should no longer be regarded as mandatory."

269-71 (1997) (discussing qualified immunity in § 1983 and *Bivens* cases).

While the law in this matter is clearly established in favor of Plaintiffs, it is not necessary for a plaintiff to show a published decision establishing the rights in question under precisely the same circumstances as those presented in the case in question. Some conduct so clearly violates a person's rights that the question is unlikely to come before the courts for a decision. The Supreme Court has explained in the context of both fair warning for criminal law and qualified immunity for civil rights defendants, that "general statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful.'" *United States v. Lanier*, 520 U.S. at 271, *quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987). To rule that until the Supreme Court has spoken, no right of litigants in this circuit can be deemed established before we have decided the issue would discourage anyone from being the first to bring a damages suit in this court, he would be certain to be unable to obtain any damages. *Burgess v. Lowery*, 201 F.3d 942, 85 A.L.R.5th 719 (7th Cir. 2000) (affirming denial of summary judgment based on qualified immunity).

In *Capeoman v. Reed*, 754 F.2d 1512, 1514 (9th Cir.1985), the 9th Circuit interpreted the meaning of *Harlow's* "clearly established" rights standard. This Court concluded that in the absence of binding precedent, a court should look at all available decisional law including decisions of state courts, other circuits, and district courts to determine whether the right was clearly established. *Ward v. County of San Diego*, 791 F.3d 1329, 1332 (9th Cir. 1986), *citing Capeoman*.

The absence of such cases, however, does not mean a government employee is entitled to immunity for such conduct. "There has never been a section 1983 case accusing welfare officials of selling foster

children into slavery; it does not follow that if such a case arose, the officials would be immune ... because no previous case had found liability in those circumstances." **K.H. ex rel. Murphy v. Morgan**, 914 F.2d 846, 851 (7th Cir.1990). The controlling question is whether a reasonable government official would have understood at the time of the conduct in question that the conduct violated the plaintiffs' constitutional rights.

The Defendant state officials in this case knew that P.T. was entitled to be free from unlawful search and seizure and invasion of privacy, but deliberately violated P.T.'s constitutional rights by forcing him into the nurses' office, forcing P.T. to disrobe and take a shower, scrubbing him over large portion of his body, sticking cotton balls in his ears while ridiculing and harassing him about being "dirty." *Complaint, para. 15-17.*

The Fourth Amendment of the United States Constitution provides, in pertinent part: "The right of the people to be secured in their persons ... against unreasonable searches and seizures, shall not be violated...." U.S. Const. amend. IV. The Supreme Court, in interpreting the Fourth Amendment, has held that "wherever an individual may harbor a reasonable 'expectation of privacy' [the Fourth Amendment entitles the person] to be free from unreasonable governmental intrusion." **Terry v. Ohio**, 392 U.S. 1, 9, 88 S.Ct. 1868, 1873, 20 L.Ed.2d 889 (1968). The Supreme Court recognized in *Terry* that "the specific content and incidents of this [Fourth Amendment] right must be shaped by the context in which it is asserted. For 'what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures.'" *Terry*, 392 U.S. at 9, 88 S.Ct. at 1873 (quoting **Elkins v. United States**, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446, 4 L.Ed.2d 1669 (1960)). Thus, the Fourth Amendment is violated when the government conducts an unreasonable search in an area where a person has a reasonable expectation of privacy.

Page 11 of 15

People harbor a reasonable expectation of privacy in their "private parts." *In Doe v. Calumet City, Illinois*, 754 F.Supp. 1211 (N.D.Ill.1990), the court recognized that "[d]eeply imbedded in our culture ... is the belief that people have a reasonable expectation not to be unclothed involuntarily, to be observed unclothed or to have their 'private' parts observed or touched by others." *Doe*, 754 F.Supp. at 1218.

A number of federal and state courts have ruled that there must be reasonable suspicion directed specifically at each student before a school official can search students. *Horton v. Goose Creek Independent School Dist.*, 690 F.2d 470 (5th Cir. 1982); *Jones v. Latexo Independent School District*, 499 F. Supp. 223 (E.D. Tex. 1980) (Both Texas cases, federal courts ruled that a sniff search around students' bodies by police dogs trained to detect drugs was unconstitutional because there was no individualized suspicion); *Kuehn v. Renton School Dist.*, 694 P.2d 1078 (Wash. Sup. Ct. 1985) (Court held that school officials did not reasonable suspicion when they searched students luggage as a condition for participation in a band concert without particularized suspicion that contraband would be found with respect to each student searched); *Bellnier v. Lund*, 438 F. Supp. 47 (N.D.N.Y. 1977) (Federal court ruled that it was unreasonable to strip search entire fifth grade class in order to identify the student who had stolen money).

Plaintiffs' Complaint sets forth that P.T.'s constitutional rights to be free from an invasion of privacy and illegal search and seizure were violated.   Moreover, the aforementioned decisions show that these rights have been "clearly established" throughout the nation and specifically in the Fifth Circuit Court of Appeals. *Harlow; Saucier*. Thus, individual Defendants are not entitled to qualified immunity in this case.

### D.   TEXAS TORT CLAIMS ACT DOES NOT APPLY TO PLAINTIFFS' INTENTIONAL TORT CLAIMS, INCLUDING BATTERY, FALSE IMPRISONMENT, CHILD NEGLECT INVOLVING SCHOOL DISCIPLINE, ASSAULT, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Defendants claim that Plaintiff's state claims should be dismissed pursuant to the Texas Tort Claims

Act.  However, Sec. 101.057 CIVIL DISOBEDIENCE AND CERTAIN INTENTIONAL TORTS states:

This chapter does not apply to a claim:

(1)    based on an injury or death connected with any act or omission arising out of civil disobedience, riot, insurrection, or rebellion; or

(2)    arising out of assault, battery, false imprisonment, or any other intentional tort, including a tort involving disciplinary action by school authorities.

It is clear from the plain language of the statute that the Texas Tort Claims Act does not apply to plaintiffs' intentional tort claims, including battery, false imprisonment, child neglect involving school discipline,  assault, and intentional infliction of emotional distress.  Furthermore, it is clear that the Texas Tort Claims Act does not apply to Plaintiff's federal claims.  Accordingly, theses claims against the Defendants should not be dismissed.

**E.    IN THE EVENT THAT THIS COURT IS INCLINED TO GRANT ANY PORTION OF DEFENDANTS' MOTION, PLAINTIFF REQUESTS LEAVE TO AMEND THE COMPLAINT.**

Leave to amend "shall be freely given when justice so requires." F.R.C.P. 15(a).  While Fed. R. Civ. P. 15 places leave to amend within the sound discretion of the trial court, a court must remain guided by the underlying purpose of Rule 15 . . . to facilitate decision on the merits, rather than on the pleadings or technicalities.  *See  Conley v. Gibson*, 355 U.S. 41, 48, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).  Additionally, Rule 15(a) severely restricts the judge's freedom, directing that leave to amend shall be freely given when justice so requires.  *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (C.A.5 (La.), 1981).  Therefore, leave to amend should not be denied without a substantial reason such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

Federal Rule of Civil Procedure 15(a) allows a plaintiff to file one amended complaint as a matter of right when the defendants have not filed a responsive pleading.  The Fifth Circuit follows the prevailing view that a motion to dismiss is not a responsive pleading.  ***Whitaker v. City of Houston, Tex.***, 963 F.2d 831 (C.A.5 (Tex.), 1992).  In this case, Defendant has not filed a responsive pleading.   Leave to amend should be granted "if it appears at all possible that the plaintiff can correct the defect. 3 Moore, Federal Practice, § 15.10 at 838 (2d ed. 1948).  In the event that this Court were to find any of Plaintiffs' causes of action insufficient, leave to amend is graciously requested.

## III.

## <u>CONCLUSION</u>

WHEREFORE, the Plaintiffs respectfully request that this Honorable Court deny Defendants' motion in its entirety.

Respectfully submitted:
*/s/ Jason J. Bach*
JASON J. BACH
Texas State Bar No. 24071556
THE BACH LAW GROUP, PLLC
2802 Flintrock Trace, Suite 255
Austin, Texas 78738
Tel: (512) 879-3901
Fax: (702) 925-8788
Attorney in Charge for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 11th day of December, 2012, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means:

Cynthia L. Hill
306 W. 7th Street, Suite 1045
Fort Worth, Texas 76102

<u>*s/ Jason J. Bach*</u>
JASON J. BACH