IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

AMBER TILLEY, et al.                §
                                    §
VS.                                 §   CIVIL ACTION NO. 4:12-CV-408-Y
                                    §
PEASTER INDEPENDENT SCHOOL          §
DISTRICT, et al.                    §

ORDER GRANTING IN PART AND
DENYING IN PART MOTION TO DISMISS

     Before the Court is the Motion to Dismiss (doc. 13) filed by

defendants Peaster Independent School District ("PISD"), Julie West,

and Debbie Van Rite.  After review, the Court will grant the motion

in part and deny it in part.


I.   Background

     Plaintiffs are Amber and Michael Tilley, as next friends of their

minor child, P.T., a student in PISD.  According to their First Amended

Complaint (doc. 11), the Tilleys have had a "historically contentious

relationship" with PISD, primarily as a result of their frequently

"requesting appropriate educational services" for P.T.'s older brother.

(Pls.' Am. Compl. ¶ 13.)

     Because of this adversarial relationship, allege the Tilleys,

employees of PISD have repeatedly "harassed" and "retaliated" against

P.T.  (*Id.*)  According to the Tilleys, this harassment has included

accusing P.T. of "smelling badly" and of being "dirty" and "filthy."

(*Id*. ¶ 14.) The Tilleys complain of one incident in particular, which

allegedly occurred on November 15, 2011, in the school nurse's office

("the November 2011 incident"). (*Id.* ¶ 15.) The Tilleys allege that, on that day, West and Van Rite "instructed P.T. to disrobe and take a shower, all while they were present[] and another student was in the office." (*Id.* ¶ 16.) After P.T. objected, allege the Tilleys, "West and Van Rite forced P.T. to partially remove his clothing and began violently washing his body with a washcloth, scrubbing him over large portion[s] of his body, [and] [sticking] cotton balls in his ears, all the while ridiculing and harassing him about being 'dirty.'" (*Id.* ¶ 17.) The Tilleys allege that "P.T. was then forced to apply deodorant" and that West and Van Rite told P.T. that if he "ever [came] to school dirty again [they would] strip [him] buck naked and throw [him] in the shower and scrub [him] down." (*Id.* ¶ 18.) West and Van Rite also allegedly threatened to "spray [P.T.] and his backpack [every day] so that he [would] not 'smell'" and told him that the ingredients in the spray would "kill" him. (*Id.* ¶ 19.)

That evening, according to the Tilleys, P.T. was "visibly and severely distraught." (*Id.* ¶ 20.) The Tilleys allege that once they learned of the incident, they filed a police report with the local sheriff's office, but that the sheriff's office decided to take no further action. (*Id.* ¶ 21.) The Tilleys further allege that PISD "began retaliating against P.T." for filing the police report. (*Id.* ¶ 22.) This retaliation allegedly consisted of P.T.'s being "excluded from events and activities that all other students were allowed to participate in" and being called "naughty" by a PISD employee dressed

as Santa Claus during a school event.  (*Id.*)

The Tilleys allege that PISD's "harassment and retaliation" of P.T. have caused him "severe emotional trauma," which has manifested itself in the form of "OCD-type behaviors, such as taking numerous baths a day, constantly cleaning his ears, and spraying himself with large amounts of cologne." (*Id.* ¶ 23.)  To recover for and redress this alleged harm, the Tilleys filed the instant suit against PISD, West, and Van Rite (doc. 1).  The Tilleys assert claims under 42 U.S.C. § 1983 for "invasion of privacy" and "illegal search and seizure" in violation of the Fourth and Fourteenth Amendments to the United States Constitution, and for "retaliation" in violation of the First Amendment. (*Id.* at 4-7.)  The Tilleys also assert claims under Texas law for battery, false imprisonment, child neglect, assault, intentional and negligent infliction of emotional distress, and negligent hiring, training, and supervision.  PISD, West, and Van Rite now move to dismiss the Tilleys' claims under Federal Rule of Civil Procedure 12(b)(6).


II.  Legal Standard

Rule 12(b)(6) authorizes the dismissal of a complaint that fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  This rule must be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court.  *See* Fed. R. Civ. P. 8(a).  Rule 8(a) calls for

"a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2); *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (holding that Rule 8(a)'s simplified pleading standard applies to most civil actions).   The Court must accept as true all well-pleaded, non-conclusory allegations in the complaint and liberally construe the complaint in favor of the plaintiff.   *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

The plaintiff must, however, plead specific facts, not mere conclusory allegations, to avoid dismissal. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).   Indeed, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," and his "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 555 (2007) (citations omitted).   The Court need not credit bare conclusory allegations or "a formulaic recitation of the elements of a cause of action."  *Id.* at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

III. Analysis

    A.    Federal Claims

    "Title 42 U.S.C. § 1983 provides a vehicle by which a plaintiff may seek redress for constitutional injuries."  *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 752 (5th Cir. 2009).  "To state a claim under 42 U.S.C. § 1983, 'a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.'"  *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 854–55 (5th Cir. 2012) (quoting *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008)).  "Municipal liability for § 1983 violations results if a deprivation of constitutional rights was inflicted pursuant to official custom or policy."  *McKinney v. Irving Indep. Sch. Dist.*, 309 F.3d 308, 312 (5th Cir. 2002) (citation omitted).

    1.    Constitutional Violations

    a.    Fourth Amendment

    The Fourth Amendment, made applicable to the states by the Fourteenth Amendment, proscribes "unreasonable searches and seizures."  U.S. Const. amend. IV; *United States v. Oliver*, 630 F.3d 397, 405 (5th Cir. 2011); *Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009).[1]  As an initial matter, the Court observes that the Tilleys

---

    [1]    If the Tilleys are invoking the Fourteenth Amendment beyond just its role in making the Fourth Amendment applicable to the states, then it is not apparent from the amended complaint.  Thus, insofar as the Tilleys' § 1983 claims

have not alleged that an "illegal search" took place.  "'Search'
consists of looking for or seeking out that which is otherwise
concealed from view."  Black's Law Dictionary 1349 (6th ed. 1990).
The Tilleys have not alleged that West or Van Rite looked for anything
on P.T.'s person, only that they forced him to "partially remove his
clothing" so that they could subject him to a "violent[] washing."
(Pls.' Am. Compl. ¶ 17.)  Thus, they have not alleged that P.T. was
subjected to a "search" within the meaning of the Fourth Amendment.

By contrast, "[a] 'seizure' triggering the Fourth Amendment's
protections occurs . . . when government actors have, 'by means of
physical force or show of authority, in some way restrained the liberty
of a citizen.'"  *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)
(quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)).  The November
2011 incident would appear to fall within this definition, and
Defendants' motion does not establish otherwise.  Furthermore, although
"the rights of children to freely move about, especially within a
public school, are not as extensive as adults' rights," their rights
under the Fourth Amendment are "not non-existent."  *Gates v. Tex.
Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 432 (5th Cir.
2008) (citations omitted).  Considering "the nature and scope of the
seizure[] at issue," the Court is satisfied that the Tilleys have

---

are based on violations of the Fourteenth Amendment (e.g., due process), they are
deficiently pled and should be dismissed.

alleged an unreasonable seizure in violation of the Fourth Amendment."[2]

The Tilleys have not, however, alleged facts sufficient to establish municipal liability under the Fourth or Fourteenth Amendment. "Municipal liability under Section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose moving force is the policy or custom." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 166 (5th Cir. 2010) (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citation omitted)).

In their response, the Tilleys spend a mere paragraph defending this claim, arguing conclusorily that they "pled the existence of a policy or custom to violate students' Constitutional rights" and "that this policy was known and carried out by policy makers at the school." (Pls.' Resp. 8.) But the Tilleys' amended complaint simply does not support this. There are no factual allegations from which it may reasonably be inferred that West or Van Rite were policy makers for PISD or that there was an official policy or custom encouraging conduct such as that alleged to have occurred during the November 2011 incident. *See Zarnow*, 614 F.3d at 1667 ("A policymaker is 'one who takes the place of the governing body in a designated area of

---

[2]     West and Van Rite posit that they are entitled to qualified immunity. But because the instant motion is the first time that they have raised this defense, the issue has not been adequately briefed. Indeed, West and Van Rite did not even mention the defense in the parties' Joint Status Report (doc. 17). Nevertheless, following entry of this order, the Court will instruct the Tilleys to file a Rule 7 reply and stay all other matters in this case until the qualified-immunity issue is resolved. *See Schultea v. Wood*, 47 F.3d 1427, 1432-33 (5th Cir. 1995).

city administration.'" (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984))); *see also Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993) ("Texas law is clear that final policymaking authority in an independent school district . . . rests with the district's board of trustees.").[3]

b.    First Amendment

The Tilleys allege that Defendants retaliated against P.T. in violation of his First Amendment right to petition the government. "Retaliation based on the exercise of th[e] right [to petition] is redressable under 42 U.S.C. § 1983." *Coastal Commc'ns Serv., Inc. v. City of New York*, 658 F. Supp. 2d 425, 455 (E.D.N.Y. 2009) (citing *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir. 2002)).  To state this type of retaliation claim, a plaintiff must allege facts "show[ing] that (1) his conduct was protected by the First Amendment, and (2) such conduct prompted or substantially caused defendant's action." *Dougherty*, 282 F.3d at 91; *see also Smith v. Hightower*, 693 F.2d 359, 366 (5th Cir. 1982) ("The Court should consider whether the plaintiffs have shown, first, that the conduct allegedly retaliated against or sought to be deterred was constitutionally protected, and, second, that the State's

---

[3]    In the event that the Tilleys intend their invasion-of-privacy claim to be discrete from their claims for illegal search and seizure, that claim is redundant.  "The [Fourth] [A]mendment protects the citizen against invasion of privacy." *United States v. Brand*, 556 F.2d 1312, 1318 (5th Cir. 1977).  It does so by proscribing "unreasonable searches and seizures."  U.S. Const. amend. IV. Thus, the Tilleys' claims for unreasonable search and seizure adequately address P.T.'s rights under the Fourth Amendment, and any discrete claim for "invasion of privacy" should be dismissed as a redundancy.

[retaliatory conduct] was motivated at least in part by a purpose to retaliate for or to deter that conduct."). It is sufficient, for purposes of the second element, "to allege facts from which a retaliatory intent on the part of the defendants reasonably may be inferred." *Dougherty*, 282 F.3d at 91 (citation omitted).

The Tilleys allege that West and Van Rite, in retaliation for the Tilleys' filing a police report, "excluded [P.T.] from events and activities that all other students were allowed to participate in." (Pl.'s Am. Compl. ¶ 22.) In addition, the Tilleys allege that West, dressed in Santa garb, gestured at a holiday event that P.T. had been "naughty" and that she did so in retaliation for the Tilleys' filing a police report. (*Id.*) Given the law's bias against dismissal at the Rule 12(b)(6) stage, the Court is persuaded that the Tilleys have alleged sufficient facts to establish a violation by West and Van Rite of the right-to-petition clause of the First Amendment. *See Mazzeo v. Gibbons*, 649 F. Supp. 2d 1182, 1194 (D. Nev. 2009) ("[F]iling a police report may implicate speech that is protected under the Petition Clause of the First Amendment." (quoting *Doe v. San Mateo County*, Nos. C 07-05596 SI, C 08-02541 SI, 2009 WL 735149, at *5 (N.D. Cal. Mar. 19, 2009) (internal quotation marks omitted))). Moreover, the Court notes that Defendants' motion only addresses the Tilleys' claims under the free-speech clause of the First Amendment, rather than the right-to-petition clause, and, therefore, does not

9

establish that dismissal is proper.[4]  However, for the reasons discussed in connection with the Court's analysis of the Tilleys' Fourth Amendment claims, the Court concludes that the Tilleys have not alleged sufficient facts to establish municipal liability against PISD under the First Amendment.

> 2.   Under Color of State Law

Once a § 1983 plaintiff has alleged a deprivation of his constitutional rights, he must then "demonstrate that the alleged deprivation was committed by a person acting under color of state law."  *Doe ex rel. Magee*, 675 F.3d at 854-55.   But where the defendant's challenged conduct constitutes sufficient "state action" to support a constitutional violation, then it necessarily satisfies the statutory requirement of "under color of state law."  *See Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 935 (1982).   Therefore, the Court's earlier conclusion that West and Van Rite were state actors for purposes of the Tilleys' Fourth and First Amendment claims compels the conclusion that those defendants acted under color of state law for purposes of § 1983.  *See Doe v. Rains Cnty. Indep. Sch. Dist.*, 66 F.3d 1402, 1406 (5th Cir. 1995) ("[A] showing of state action is sufficient to establish action under color of state law.").

---

[4]      As noted above, the Court will stay these proceedings upon entry of this order to evaluate West and Van Rite's assertion of qualified immunity.  *See supra* note 2.

B.    State-law Claims

1.    Claims Against West and Van Rite

Under subsection 101.106(e) of the Texas Civil Practice and Remedies Code, "[i]f a suit is filed under [the Texas Tort Claims Act ("Tort Claims Act")] against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit."  Tex. Civ. Prac. & Rem. Code Ann. § 101.106(e) (West 2013).[5]  Here, the Tilleys filed suit against PISD and its employees West and Van Rite, and PISD has moved to dismiss West and Van Rite from the suit.

The dispositive question, then, is whether the Tilleys' suit was filed "under" the Tort Claims Act. *See id.*  And upon consideration, this question is easily resolved because "any tort claim against the government is brought 'under' the [Tort Claims] Act for purposes of section 101.106, even if the Act does not waive immunity." *Franka v. Velasquez*, 332 S.W.3d 367, 375 (Tex. 2011); *see also Rodriguez v. Christus Spohn Health Sys. Corp.*, 628 F.3d 731, 738 (5th Cir. 2010) (observing that "[t]he Texas Supreme Court has held that all claims falling under the Tort Claims Act, not just those for which the Tort Claims Act waived immunity, trigger the election of remedies provision" under subsection 101.106(e)).

---

[5]      In this regard, subsection 101.106(a) provides that "[t]he filing of a suit under [the Tort Claims Act] against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter."  Tex. Civ. Prac. Rem. Code § 101.106(a).

Therefore, because the Tilleys filed this suit under the Tort Claims Act against both PISD and its employees West and Van Rite, and because PISD has moved to dismiss West and Van Rite from this suit, the Tilleys' claims under the Tort Claims Act against those two defendants--which include battery, false imprisonment, child neglect, and assault--should be dismissed under subsection 101.106(e).[6]

2.   Claims Against PISD

The Tilleys assert claims against PISD for intentional and negligent infliction of mental distress and negligent hiring, training, and supervision.  Because PISD is a political subdivision of the State of Texas, it enjoys governmental immunity insofar as that immunity has not been waived.  *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003)("Governmental immunity . . . protects political subdivisions of the State, including counties, cities, and school districts.").[7]  The Tilleys, nevertheless, have not directed the Court to any statute waiving PISD's immunity from suit and liability in this case.  *See Harris Cnty. Hosp. Dist. v. Tomball Reg'l Hosp.*, 283 S.W.3d 838 (Tex. 2009)(observing that governmental immunity

---

[6]     The Tilleys contend that the Tort Claims Act "does not apply to [their] intentional tort claims, including battery[] [and] false imprisonment." (Pls.' Resp. 13.)  But "the Texas [Supreme] [C]ourt held in *Garcia* that the [the Tort Claims Act] applied and could bar a plaintiff's intentional tort claim against an employee when the plaintiff had sued both the employee and the governmental unit that employed him." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 463 (5th Cir. 2010)(citing *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 658-59 (Tex. 2008)).

[7]     "Both sovereign immunity and governmental immunity 'afford the same degree of protection and both levels of government are subject to the Tort Claims Act.'" *Rodriguez*, 628 F.3d at 734 n.7 (quoting *Garcia*, 253 S.W.3d at 655 n.2).

protects political subdivisions of the state from both suit and liability).

Although the Tort Claims Act waives governmental liability for certain types of claims, none of those claims is present here. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021.  Indeed, the Tort Claims Act provides that, "[e]xcept as to motor vehicles, this chapter does not apply to a school district." *Id.* § 101.051.  It further provides that there is no waiver for claims "arising out of assault, battery, false imprisonment, or any other intentional tort, including a tort involving disciplinary action by school authorities." *Id.* § 101.057. Therefore, the Tilleys cannot state a claim for relief under state law against PISD.


IV.   Conclusion

Based on the foregoing, the Court concludes that the Tilleys have stated claims against West and Van Rite for (1) unreasonable seizure in violation of the Fourth Amendment and (2) retaliation in violation of the right-to-petition clause of the First Amendment. All other claims against West and Van Rite, however, are either deficiently pleaded or otherwise barred and, therefore, are DISMISSED WITH PREJUDICE.[8]  The Court further concludes that the Tilleys have failed to state any claims against PISD.  Therefore, the Tilleys'

---

[8]      Because the Tilleys have amended their complaint once already, the Court declines to grant them leave to amend.

claims against PISD are DISMISSED WITH PREJUDICE.

In addition, because West and Van Rite raised the defense of qualified immunity as part of the instant motion, the following is hereby ORDERED:

(1)  The Tilleys must file a Rule 7 reply to West and Van Rite's assertion of qualified immunity no later than **May 31, 2013.**  The Tilleys' reply must allege with particularity all material facts establishing their right to recovery against West and Van Rite as to their remaining claims, including detailed facts supporting any contention that the plea of qualified immunity cannot be sustained. *See Schultea v. Wood*, 47 F.3d 1427, 1432-33 (5th Cir. 1995).

(2)  West and Van Rite must file any dispositive motions under Rule 12(c) or 56 based on the defense of qualified immunity no later than **June 28, 2013.**  The Tilleys' response to any such motion must be filed in accordance with local civil rule 7.1(e), and West and Van Rite's replies to the Tilleys' response shall be filed in accordance with local civil rule 7.1(f).

(3)  Discovery is STAYED pending resolution of West's and Van Rite's *assertions of the qualified-immunity defense.*  See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); *Schultea*, 47 F.3d at 1434.

(4)  After the Court issues a ruling on any motion filed by West and Van Rite on the issue of qualified immunity, or if no such motions are timely filed, the Court will issue a second scheduling order governing the conduct of the remaining pretrial proceedings.

SIGNED May 7, 2013.

TERRY R. MEANS
UNITED STATES DISTRICT JUDGE

14